**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JAMES MADISON PROJECT, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**UNITED STATES POSTAL SERVICE, et al.,**<br><br>**Defendants.** | ) | **Case No. 21-cv-01887 (APM)** |

**MEMORANDUM OPINION**

## I. INTRODUCTION

This action stems from multiple Freedom of Information Act (FOIA) requests for records concerning a United States Postal Service (USPS) investigations program known as the Internet Covert Operations Program ("ICOP"). ICOP provided open-source intelligence and cryptocurrency analysis for online covert operations and other investigations run by the Postal Service. Plaintiffs James Madison Project and Jana Winter sued USPS to compel production of responsive documents.

This case is in an unusual posture. USPS has moved for summary judgment both as to its search and withholdings. The agency admits that its initial search was flawed, but it explains that it corrected the error by performing a second search, which resulted in the production of approximately 160 records. Plaintiffs cross-move but only as to the adequacy of the *first* search. They concede the adequacy of the *second* search, and they do not protest any withholdings. Plaintiffs also seek discovery to uncover why the agency's first search was defective.

For the reasons stated below, the court grants USPS's motion and denies Plaintiffs' cross-motion and request for discovery.

## II. BACKGROUND

Plaintiffs filed this lawsuit in July 2021 to compel USPS to disclose the "U.S. Government's decision-making process for creation and later implementation of [ICOP]." Compl., ECF No. 1 [hereinafter Compl.], ¶ 9.[1] Plaintiffs sought various records, including materials concerning the creation and implementation of the program, documents reflecting the criteria for information-sharing with other agencies, training materials, and contracts with third parties. *See* Compl. ¶ 15. A FOIA analyst at USPS performed a search that resulted in approximately 12,000 responsive documents consisting of nearly 72,000 pages of employee emails and attachments. Decl. of Marthea Hodge, ECF No. 55-3 [hereinafter Hodge Decl.], ¶ ¶ 13, 16. The parties then agreed on a production schedule. *Id.* ¶ 13. After several years of records processing, Defendants withheld all but 500 pages based on Exemptions 6, 7(C), and 7(E). *Id.* ¶ 16.

In early 2025, USPS determined that the 72,000 pages of emails that it had reviewed were "not, in fact, responsive to Plaintiff's FOIA request." Jt. Status Rpt., ECF No. 40, at 1; Jt. Status Rpt., ECF No. 41, at 1. A FOIA analyst had conducted an email search using only the keyword "ICOP," which was a search not properly tailored to Plaintiffs' request. Hodge Decl. ¶¶ 15–16. USPS further learned that it could no longer access most of the processed emails because the hard drive on which they were stored was inadvertently dropped. *Id.* ¶¶ 18–23. Despite its best efforts, the agency was unable to recover the data. *Id.* ¶¶ 20–23. USPS also could not reconstruct the

[1] Plaintiffs initially filed suit against three agencies in addition to USPS. *See* Compl. ¶¶ 6–8. Plaintiffs later agreed to dismiss their claims against these agencies, leaving only USPS. *See* Pls.' Opp'n to Defs.' Mot., ECF No. 57, at 1 n.1.

initial search results because, under the agency's two-year retention policy for emails, they were no longer available. *Id.* ¶¶ 24–26. The agency did, however, possess a small sample of emails that were saved separately from the corrupted hard drive, which allowed it to confirm that the withheld records were not responsive. *Id.* ¶ 18.

USPS then conducted a new, non-email search. *Id.* ¶ 29. A different FOIA analyst identified two potential components with responsive records—the Analytics Group, where ICOP resided before 2021, and the Office of Counsel. *Id.* ¶¶ 29–30. The new searches resulted in the release of 160 pages, all but 13 of which were partially redacted under various FOIA exemptions. *Id.* ¶¶ 32, 35–37 (identifying withholdings under Exemptions 3, 5, 6, 7(C), and 7(E)). The agency also withheld some records in full pursuant to Exemptions 4 and 7(E). *Id.* ¶ 34.

USPS moved for summary judgment in December 2025 as to the adequacy of its search and withholdings. Defs.' Mot. for Summ. J., ECF No. 55 [hereinafter Defs.' Mot.], Mem. in Supp. of Defs.' Mot., ECF No. 55-1. Plaintiffs conceded the motion as to all but one issue: the "unlawfulness of the Government's original searches for responsive records." Pls.' Opp'n to Defs.' Mot., ECF No. 57 [hereinafter Pls.' Opp'n], at 1; *see also* Pls.' Cross-Mot. for Summ. J. and Cross-Mot. for Disc., ECF No. 58 (identical filing to Pls.' Opp'n). As to these "original searches," Plaintiffs sought both partial summary judgment and "limited discovery regarding the Government's original failure given that it has now deprived the Plaintiffs of potential access to records that have since been destroyed by USPS." Pls.' Opp'n at 1.

## III. LEGAL STANDARD

Most FOIA cases are appropriately decided on motions for summary judgment. *See Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court may award summary judgment in a FOIA case by relying on the information included in the

agency's affidavits or declarations if they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted). The agency's affidavits or declarations must "describe the documents and the justifications for nondisclosure with reasonably specific detail [and] demonstrate that the information withheld logically falls within the claimed exemption." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Further, they must not be "controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Id.*

The government agency bears the burden to prove that it has complied with its obligations under FOIA. *See U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *Tax Analysts*, 492 U.S. at 142).

## IV. DISCUSSION

### A. Reasonable Search

The adequacy of an agency's search is governed by principles of "reasonableness." *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990). An agency must show "that it has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. U.S. Dep't of Just.,* 23 F.3d 548, 551 (D.C. Cir. 1994) (internal quotation marks omitted).

"To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail and in a nonconclusory fashion the scope and method of the agency's search." *North v. U.S. Dep't of Just.*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block,* 684 F.2d 121, 126 (D.C. Cir. 1982)).

Plaintiffs maintain that USPS did not engage in "good faith efforts to ensure the reasonableness of its searches in the first place." Pls.' Opp'n at 6. Because of the defective first search, Plaintiffs claim they were "irrevocably deprived of the opportunity to even possibly contest the search adequacy and withholding determinations originally made by the Government for records that may have been potentially responsive but which now do not exist." *Id.* at 7. For these reasons, Plaintiffs argue, summary judgment should be granted in their favor as to USPS's failure to "comply with the mandates of [the] FOIA" concerning the original search. *Id*.

Plaintiffs misunderstand the relevant inquiry. Courts do not evaluate the adequacy of an agency's search in a piecemeal fashion, condemning some efforts to locate records but not others. The question is always whether the agency "conducted a search reasonably calculated to uncover all relevant documents." *Steinberg*, 23 F.3d at 551 (internal quotation marks omitted). If an agency makes a mistake at the start, that by itself does not entitle a plaintiff to judgment or relief. To the contrary, the D.C. Circuit long ago said that "what is expected of a law-abiding agency is that it admit and correct error when error is revealed." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986). When an agency does so, that suggests "'a stronger, rather than a weaker, basis' for accepting the integrity of the search . . . ." *Id.* (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981)); *see also Am. Oversight v. U.S. Dep't of Just.*, 401 F. Supp. 3d 16, 26 (D.D.C. 2019) (observing that "case after case in this jurisdiction has held that the focus should be on whether the agency admits and corrects error, not on the fact that it made a mistake

in the first place"); *North*, 774 F. Supp. 2d at 223 ("[An] agency's previous failure to demonstrate that it had conducted an adequate search does not call into question the validity of its new search for responsive records.").

That is precisely the case here. The agency's original search was flawed because it was not tailored to find records responsive to Plaintiffs' specific requests. Hodge Decl. ¶¶ 15–17. Once the agency learned of the error, it conducted new searches and disclosed responsive records. Plaintiffs contest neither the new searches nor the documents produced. Still, Plaintiffs complain of a lost "opportunity" to "possibly contest the search adequacy and withholding determinations" of the initial search. Pls.' Opp'n at 7. But USPS admits error as to the former, and as to the latter it explains that, because it had a sample of emails from the initial search, it was able to confirm that the earlier collection—nearly all of which was withheld—was non-responsive. Hodge Decl. ¶ 18. The presumption of good faith applies to these representations, and Plaintiffs offer no evidence to question, let alone rebut, them. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'") (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

With Plaintiffs having conceded the adequacy of the second search, there is nothing left for this court to do. *See Perry*, 684 F.2d at 125 ("[H]owever fitful or delayed the release of information under the FOIA may be . . . if we are convinced [Defendants] have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA."). Accordingly, the court denies Plaintiffs' partial summary judgment request and grants Defendants' motion in full.

**B. Discovery**

Plaintiffs' demand for discovery likewise fails. Discovery in a FOIA case is rare. *See Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006). It is appropriate only when there is *evidence* that the agency acted in bad faith. *See In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020). Plaintiffs, however, merely speculate that bad faith infected the first search. *See* Decl. of Bradley Moss, ECF No. 57-3, ¶ 11 ("The conduct of USPS FOIA personnel . . . *appears to have been* conducted in bad faith.") (emphasis added). That is not enough to obtain discovery. *See In re Clinton*, 973 F.3d at 114 ("The mere suspicion of bad faith on the part of the government cannot be used as a dragnet to authorize voluminous discovery that is irrelevant to the remaining issues in a case.").

Plaintiffs frame their discovery request as a procedural precursor to determining whether to file a sanctions motion. *See* Pls.' Opp'n at 10–11. But they cite no FOIA case in which a court has granted discovery for such purpose. The primary authority on which they rely, *Consumer Federation of America v. U.S. Department of Agriculture*, 539 F. Supp. 2d 225 (D.D.C. 2008), does not help them. There, the agency initially performed faulty searches but ultimately corrected the errors. *Id.* at 228. In evaluating a motion for sanctions, the court asked the agency to file a supplemental declaration detailing steps it would take when responding to future FOIA requests and identifying corrective measures it had taken, if any, to prevent future loss of responsive documents. *Id.* Contrary to what Plaintiffs suggest, the court did not permit discovery *before* the plaintiff had filed the motion for sanctions. This court declines to grant the non-merits discovery Plaintiffs seek. *See In re Clinton*, 973 F.3d at 114.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 55, is granted, and Plaintiffs' Cross-Motion for Partial Summary Judgment and Cross-Motion for Discovery, ECF No. 58, is denied.

A final, appealable order accompanies this Memorandum Opinion.

Dated: September 23, 2026

Amit P. Mehta
United States District Judge